David Mark RIVERA, Plaintiff, pro se,

v.

The **UNITED STATES**, Defendant.

No. 11–596C.

United States Court of Federal Claims.

July 12, 2012.

David Mark Rivera, Yazoo City, Mississippi, Plaintiff, pro se.

Scott A. MacGriff, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

On September 16, 2011, *pro se* plaintiff David Mark Rivera ("Plaintiff"), a federal prisoner at the Federal Correctional Complex (Low) in Yazoo City, Mississippi, filed a Complaint ("Compl.") in the United States Court of Federal Claims. The September 16, 2011 Complaint alleges that, through a series of events, Plaintiff deposited hundreds of millions of dollars with the United States

Treasury ("the Treasury") to hold in trust, that he now demands be repaid. Compl. at 4–13.

## I. FACTUAL BACKGROUND.[1]

### A. "The Sovereign Citizen Movement."

The September 16, 2011 Complaint and the attached documents are proffered as evidence that Plaintiff is a sovereign, not a United States citizen, and therefore is entitled to obtain certain funds under a theory known as "redemption." Compl. at 4–12, 18–19. According to this theory, sovereign citizens become parties to government contracts on receipt of a birth certificate and social security card. *See Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753, 758 (W.D.Va. 2007). Through these contracts, individuals "unknowingly pledge themselves and their property ... as security for the national debt," but the Government holds the "profits it makes from this use of its citizens and their property." *Id.* at 758–59. Those who subscribe to this theory believe that the 1933 House Joint Resolution 192 provides the legal basis for "sovereign citizens" to collect money held by the Government in the trust when they file one or more Uniform Commercial Code ("UCC") financing statements, naming themselves as both the secured party and the debtor. *Id.* at 759 (citing H.R.J. Res. 192, 73d Cong. (1933)).

### B. Facts Alleged In The September 16, 2011 Complaint.[2]

The September 16, 2011 Complaint alleges that Plaintiff is a sovereign entity, not a citizen subject to United States law. Compl. at 18; *see also* Compl. at 46–47 (document entitled "Notice Declaration & Certificate of Sovereign Status"). The September 16, 2011 Complaint also alleges that Plaintiff has a "perfected security interest in all property held in the name of 'DAVID MARK RIVERA(C)'" as the "original grantor and beneficiary" of a "trust/treasury account" through which he has extended credit to the Government. Compl. at 4, 6–7, 18–19. This trust account was established by a "Contract Deed," allegedly created by the Government's issuance of Plaintiff's birth certificate and social security number. Compl. at 4, 6–7. The funds in this "trust/treasury account" are "presently under the custodial care of the U.S. Treasury," with the Secretary of the Treasury acting as "trustee" until Plaintiff "redeem[s]" his "trust/treasury account." Compl. at 4, 19. In the interim, these trust accounts are used to issue "U.S. Treasury Bonds and/or Notes" and the funds of the bonds and/or notes are "paid into the federal court's registry and later deposited into U.S. Treasury." Compl. at 5. As a result of this trust, Plaintiff is owed hundreds of millions of dollars that he allegedly issued to the

1. The facts herein have been derived from the September 16, 2011 Complaint and the documents attached thereto. In support of the Complaint, the following documents, among others, were attached: a Washington State Department of Licensing Uniform Commercial Code Debtor Information Search Report; two "Copyright Notices" for the name, David Mark Rivera; federal tax forms; letters to the Secretary of Treasury; Plaintiff's birth certificate; a UCC Financing Statement No. 2007–271–7348–7; a July 18, 2007 "Non–Negotiable Security Agreement" issued as "Bond" in the amount of $100 million dollars; a "Notice Declaration & Certificate of Sovereign Status;" a UCC Financing Statement No. 11–7280530037; and a July 29, 2011 "Notice of Special Deposit And Liability And For Discharge, Release And Reconveyance." Compl. at 31–114. Several of the attachments are captioned "Special Deposits" or "Money Order" and have writing across the face of the documents indicating that Plaintiff attempted to create money orders in total amount of hundreds of millions of dollars, and then to deposit those money or-

ders into the Treasury. Compl. at 115–81. The deposits were to be charged against debts supposedly created by the Government through the United States District Court for the Southern District of Texas, the United States Department of Justice, the Department of Treasury, and various federal employees whose names have appeared on pleadings or other official documents related to this case.

2. The "Sovereign Citizen Movement" has been discussed in government and other documents. *See generally The Sovereign Citizen Movement*, Fed. Bureau of Investigation, http://www.fbi.gov/news/stories/2010/april/sovereigncitizens_041310 (last visited June 12, 2012); *Sovereign Citizen Movement—Extremism in America*, Anti–Defamation League, http://www.adl.org/learn/ext_us/SCM.asp?xpicked:4 (last visited June 12, 2012); *Sovereign Citizens Movement*, Southern Poverty Law Center, http://www.splcenter.org/get-informed/intelligence-files/ideology/sovereign-citizens-movement (last visited June 12, 2012).

United States as credit. Compl. at 6–12, 19. The Secretary of the Treasury, as "trustee," however, has refused Plaintiff's demand for repayment. Compl. at 6–12, 19. Therefore, the September 16, 2011 Complaint seeks repayment as well as injunctive and equitable relief, including protection against retaliation for having commenced this action.[3] Compl. at 11–13.

## II. PROCEDURAL HISTORY.

On November 14, 2011, the Defendant ("the Government") filed a Motion To Dismiss Complaint ("Gov't. Mot."), pursuant to RCFC 12(b)(1) and 12(b)(6), because Plaintiff has not established a valid contract with the Government, has not cited any statutes that would enable the court to have jurisdiction, and the bounds of the court's remedial powers are exceeded by the request for equitable relief. Gov't. Mot. at 7–10.

On December 12, 2011, the Government also filed three additional motions: (1) a Motion For Protective Order Striking Plaintiff's Second Discovery Request, (2) a Motion For Leave To File An Amended Certificate Of Service For Defendant's Motion For Protective Order Striking Plaintiff's Discovery Request, and (3) a Motion For Leave To File An Amended Certificate Of Service For Defendant's Response To Plaintiff's Motion To Strike Government Counsel's Notice Of Appearance.

On December 28, 2011, Plaintiff filed a document captioned "Notice Of Response To Respondent's Response And Motion And Command To Respondent, The United States—By Special Visitation[.]" On December 29, 2011, Plaintiff filed a document captioned "Constructive Notice—By Special Visitation[.]" On January 17, 2012, Plaintiff filed a document captioned "Notice Of Response To Second 'Notice Of Appearance' And Emergency Third Special Interrogatory And Special Advisory—By Special Visitation[.]"

On April 25, 2012, the court allowed several documents to be filed that were previously submitted by the parties, but not formally docketed due to filing defects. These include: a document captioned "Notice And Demand For Emergency Hearing And Determination On Verified Notice And Petition—By Special Visitation," filed by Plaintiff; a document captioned "Verified Final Notice And Demand To Strike Respondent's Papers And For Final Order Of The Court—By Special Visitation,"[4] filed by Plaintiff; a Motion For A Protective Order Striking Plaintiff's Discovery Request, filed by the Government; and a Response To Plaintiff's Motion To Strike Government Counsel's Notice Of Appearance And For Final Order Of The Court, filed by the Government.

## III. DISCUSSION.

### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

 The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the

---

3. The claims presented in the Plaintiff's September 16, 2011 Complaint are similar to those of Brandon S. Gravatt, an inmate housed in the same prison as Plaintiff. *See Gravatt v. United States*, 100 Fed.Cl. 279 (2011). For example, the September 16, 2011 Complaint cites the same statutes that the *Gravatt* plaintiff also relied upon: 28 U.S.C. § 2042 and 31 U.S.C. §§ 1321(b)(1), 1322. *Compare* Compl. at 2, *with Gravatt*, 100 Fed.Cl. at 287–88. Similarly, the *Gravatt* plaintiff also requested injunctive relief that the court denied, because there were no valid monetary claims presented. *Compare*

Compl. at 11–13, *with Gravatt*, 100 Fed.Cl. at 288.

4. The document captioned "Verified Final Notice And Demand To Strike Respondent's Papers And For Final Order Of The Court—By Special Visitation" requests that the court "strike" the Government's Motion To Dismiss and enter judgment for all the relief requested by Plaintiff, therefore the court treats this filing as Plaintiff's Response to the Government's Motion To Dismiss.

United States for money damages.... [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls on the plaintiff. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The jurisdictional defects in Plaintiffs September 16, 2011 Complaint are discussed below.

### B. Standards For Decision On Motion To Dismiss.

#### 1. Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law .... is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading.... But a party may assert the following defenses by motion; (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995).

Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question .... [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

#### 2. Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim ... is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading.... But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court "must assess whether the complaint adequately states a claim and whether plaintiffs can allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Hutchens v. United States*, 89 Fed.Cl. 553, 562 (2009) (citations omitted) (internal quotation marks omitted). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level," accepting all factual allegations in the complaint as true and "indulg[ing] all reasonable inferences in favor of the non-movant." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### C. Standard Of Review For *Pro Se* Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers" (citations omitted) (internal quotation marks omitted)). It has been the tradition of this court to examine the record "to see if [a *pro*

*se* ] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke,* 60 F.3d at 799.

### D. Whether Plaintiff's Complaint Should Be Dismissed For Lack Of Jurisdiction.

#### 1. The Government's Argument.

The Government argues that the allegations in the September 16, 2011 Complaint are not new, but have been asserted in a series of frivolous filings in courts throughout the United States. Gov't. Mot. at 2. A *pro se* plaintiff is not excluded from complying with jurisdictional requirements, despite the leniency generally afforded to them. Gov't. Mot. at 6. Therefore, the September 16, 2011 Complaint must be dismissed, because it does not state a claim within this court's jurisdiction. Gov't. Mot. at 7.

First, Plaintiff alleges that his birth certificate and social security number are express contracts with the United States, under which Plaintiff loaned funds to the Government. Compl. at 4, 6–7, 18–19. Because "[n]either birth certificates nor social security numbers recognize or impose contractual rights, obligations, or duties," this court previously has held that such an allegation is "frivolous" and does not confer jurisdiction on this court. *See Gravatt v. United States,* 100 Fed.Cl. 279, 286 (2011); *see also Bryant,* 524 F.Supp.2d at 762 (holding that a claim based on the same theories as those advanced by plaintiff in this case are "clearly nonsense in almost every detail").

Second, 28 U.S.C. § 2042 is not money-mandating. *See Gravatt,* 100 Fed.Cl. at 287 (holding that section 2042 is not money-mandating because "it describes the requirements for disbursement of money paid into the court by private parties .... [and] does not impose any specific monetary obligations on the government"). Moreover, a claim based on section 2042 is "frivolous on its face because the provision does not apply to the Court of Federal Claims." *Id.*

Third, Plaintiffs reliance on 31 U.S.C. §§ 1321(b)(1) and 1322 is misguided. Gov't. Mot. at 9. The analysis of whether sections 1321(b)(1) and 1322 are money-mandating is unnecessary, because the claims alleged in the September 16, 2011 Complaint are "patently frivolous" and "[i]t strains all logic and reason to believe that the trust fond alleged by plaintiff actually exists." *Gravatt,* 100 Fed.Cl. at 288. Since the September 16, 2011 Complaint failed to make any credible allegation that Plaintiff is the beneficiary of an actual trust, Plaintiff is not within the class of plaintiffs entitled to recover under sections 1321(b)(1) and 1322 if those provisions were money-mandating. Gov't. Mot. at 10 (citing *Gravatt,* 100 Fed.Cl. at 288).

Fourth, the court does not have the authority to grant equitable or injunctive relief, unless it is tied to a money judgment. *See Voisin v. United States,* 80 Fed.Cl. 164, 177–78 (2008) (noting that the court has no authority to grant equitable relief unless it is tied and subordinate to a money judgment (citing *United States v. King,* 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (holding that the court generally does not have the authority to issue declaratory judgments); *James v. Caldera,* 159 F.3d 573, 580–81 (Fed. Cir.1998) (holding that the court has the authority to grant declaratory relief in cases where the declaratory relief is "an incident of and collateral" to a money judgment))). In this case, there is no legitimate claim for a money judgment, because the September 16, 2011 Complaint does not assert a valid contract claim nor cite a money-mandating statute. Gov't. Mot. at 10. As a result, the claims in the September 16, 2011 Complaint must be dismissed. Gov't. Mot. at 11.

#### 2. Plaintiff's Response.

The September 16, 2011 Complaint alleges that this court has jurisdiction to adjudicate the claims therein under 28 U.S.C. § 2041 et seq., 31 U.S.C. § 1321 et seq., the "Big Tucker Act," 28 U.S.C. § 1491(a)(1), and the "Little Tucker Act," 28 U.S.C. § 1346(a)(2). Compl. at 2–3. The following factual allegations establish jurisdiction under one or more of these statutes.

First, Plaintiff extended credit to the Government through the use of his "common-

law-copyrighted trade-name/trademark," as evidenced by Plaintiff's birth certificate that "is used by a bond(s) for the performance of UNITED STATES Government Contract Number [Plaintiff's Social Security Number]." Compl. at 4. This bond was held by the trustee, the Secretary of the Treasury, in a "National Registry/Trust Account[.]" Compl. at 4. In addition, Plaintiff caused "several and substantial special deposits to be advanced on behalf of BORROWER [The United States]" and that the trust account was used to issue Treasury Bonds. Compl. at 4–5. Subsequently, these bonds "were paid into the federal court's registry and later deposited into U.S. Treasury." Compl. at 5.

Therefore, Plaintiff is entitled to have these funds repaid, as he is "the rightful owner of the trust/registry funds paid into the federal registry and on deposit in the U.S. Treasury." Compl. at 7. The Government has no beneficial interest in these funds, but rather is merely holding these funds for the rightful owner—here, the Plaintiff. Compl. at 8 (citing *United States v. Klein*, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938)). As such, these funds must be distributed to Plaintiff, pursuant to 28 U.S.C. § 2042 and 31 U.S.C. § 1321(b)(1), that govern the "distribution of trust/registry funds[.]" Compl. at 9. Under these statutes, the court is "duty-bound" to determine the entitlement of the property at issue and to "direct disbursement and trust distribution[.]" Compl. at 10.

In addition, the Plaintiff is entitled to injunctive and equitable relief. An affidavit submitted by Plaintiff claims that after he brought past actions, the Government retaliated against him, including by placing him in a Special Housing Unit. Compl. at 19–20. The September 16, 2011 Complaint requests that this court grant his request for "temporary injunctive and equitable relief" to prevent this type of retaliation. Compl. at 12.

### 3. The Court's Resolution.

■ As a threshold matter, neither a birth certificate nor a social security number evidence a contract on which a private party can sue the Government. *See Gravatt*, 100 Fed. Cl. at 286 (holding that "[n]either birth cer-

tificates nor social security numbers recognize or impose contractual rights, obligations, or duties" and determining that such claims are "frivolous"); *cf. Troxelle v. United States*, No. 10–312C, 2010 WL 3982349, at *3–4 (Fed.Cl. Oct. 6, 2010) (unpublished) (holding that the issuance of a social security number is not a property interest for purposes of alleging a claim under the Fifth Amendment under the United States Constitution).

■ Plaintiff also contends that jurisdiction is proper because he has an implied contract with the Government. Compl. at 3. If Plaintiff is suggesting that the September 16, 2011 Complaint alleges a breach of an implied-in-law contract, the court does not have jurisdiction over such a claim. *See Hercules Inc. v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) ("We have repeatedly held that [the jurisdiction of the United States Court of Federal Claims] extends only to contracts implied in fact, and not to claims on contracts implied in law."). If Plaintiff is suggesting that the September 16, 2011 Complaint alleges a breach of an implied-in-fact contract, the elements required to establish an implied-in-fact contract were not pled. *See City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir.1990) (holding that in order to establish an implied-in-fact contract, a plaintiff must demonstrate: (1) "mutuality of intent to contract;" (2) "consideration;" (3) "lack of ambiguity in offer and acceptance;" and (4) "the Government representative whose conduct is relied upon must have actual authority to bind the government in contract" (internal quotation marks omitted)).

■ Plaintiff also fails to understand that 28 U.S.C. § 2042 "does not obligate the government to pay money to claimants[,]" but instead "describes the requirements for the disbursement of money paid into the court by private parties." *Gravatt*, 100 Fed. Cl. at 287. Since section 2042 "does not impose any specific monetary obligations on the [G]overnment, it cannot provide a basis for the payment of damages," and therefore it "is not a money-mandating source of jurisdiction under the Tucker Act." *Id.* Moreover,

the section 2042 claim is "frivolous on its face because the provision does not apply to the Court of Federal Claims." *Id.* at 287–88.

Nor do 31 U.S.C. §§ 1321(b)(1) and 1322 provide Plaintiff with a remedy in this court. Section 1321(b)(1) requires that amounts to be held in trust by the United States as a trustee must be "deposited in an appropriate trust fund account in the Treasury" and "disbursed in compliance with the terms of the trust." 31 U.S.C. § 1321(b)(1) (2006). Section 1322 requires the Secretary of the Treasury to transfer unclaimed trust funds into a special account from which claims to those specific funds can be paid. *See* 31 U.S.C. § 1322 (2006). As the court has held, "[i]t strains all logic and reason to believe that the trust fund alleged by plaintiff actually exists." *Gravatt,* 100 Fed.Cl. at 288. Therefore, because the September 16, 2011 Complaint does not state a credible allegation that Plaintiff "is a beneficiary of a trust to which the United States serves as trustee," he is unable to recover under sections 1321(b)(1) and 1322. *Id.* (quoting *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1307 (Fed.Cir.2008) (holding that a plaintiff must make a "nonfrivolous assertion that [he or she] is within the class of plaintiffs entitled to recover under the money-mandating source")).

Finally, the court does not have jurisdiction to adjudicate claims for injunctive relief related to a prison sentence because, in non-bid protest actions, the court only has jurisdiction to provide equitable relief in limited circumstances. *See, e.g., Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998) ("Although the Tucker Act has been amended to permit the [United States] Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, there is no provision giving the [United States] Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." (citations omitted)).

Since the September 16, 2011 Complaint does not involve a contractual relationship with the Government, nor invoke a money-mandating statute, it must be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1).

## IV. CONCLUSION.

For the reasons discussed herein, the Government's November 14, 2011 Motion To Dismiss is granted. *See* RCFC 12(b)(1) and (6). Accordingly, the Clerk of the Court is directed to dismiss Plaintiff's September 16, 2011 Complaint.

**IT IS SO ORDERED.**