### CORN EXCHANGE BANK TRUST CO. et al. v. EMPIRE TRUST CO. et al.

No. 226, Docket 22580.

United States Court of Appeals Second Circuit.

Argued May 11, 1953.

Decided July 20, 1953.

Olin, Murphy & Redmond, New York City, for appellant Empire Trust Co.; William G. Murphy, New York City, of counsel.

Bernard Cowen, New York City, for appellees; A. Frank Cowen, New York City, of counsel.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Interborough Consolidated Corporation was adjudicated bankrupt in March 1919 and its trustee in bankruptcy was discharged in April 1927. Pursuant to 28 U.S.C.A. § 2042, the present proceeding was initiated in 1950 by Corn Exchange Bank Trust Co., a creditor whose claim had been allowed, to reach unpaid dividends in the amount of $1216.75, which had been deposited in the Treasury of the United States pursuant to 28 U.S.C.A. § 2041. Later, the proceeding was expanded by the addition of a claim against Empire Trust Company, for moneys received by it under orders of the bankruptcy court to be paid to holders of the bankrupt's bonds but never paid them because of their failure to present their bonds to Empire. Such moneys, in the amount of some $30,000, Empire had turned over to the State of New York in 1946 pursuant to the New York Abandoned Property Law.[1] Because the State will have to indemnify Empire if it is held liable to creditors of the bankrupt estate, the State intervened in the proceeding below and has carried the laboring oar on the appeal.

The order on appeal directed Empire forthwith to pay $29,966.94 into court, and directed the clerk of the court to distribute it to Corn Exchange Bank Trust Company and four other creditors, who had intervened as claimants, in proportion to their respective claims. The order also directed the Treasurer of the United States to pay $1,216.75 into court and directed the clerk to disburse it as directed. The appeal raises no question as to the correctness of the order with respect to the sum of $1,-

Nathaniel L. Goldstein, Atty. Gen. of New York, for appellant People of State of New York; Wendell P. Brown, Sol. Gen., Albany, N. Y., and Daniel M. Cohen, Asst. Atty. Gen., of counsel.

1. Abandoned Property Law, § 300 et seq.

216.75, representing unpaid dividends in the Treasury of the United States.

The basic question is whether the dividend moneys. paid to Empire for the holders of the bankrupt's bonds were paid to it as disbursing agent of the trustee in bankruptcy or as dividends on its own claim as indenture trustee. Section 13 of the indenture contained a covenant that "the Company, upon demand of the Trustee, will pay to the Trustee for the benefit of the holders of the purchase money bonds and coupons then outstanding, the whole amount due and payable * * * and, in case the Company shall fail to pay the same forthwith upon such demand, the Trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid." This court held in In re United Cigar Stores, 68 F.2d 895 that such a covenant gives the indenture trustee a claim provable in bankruptcy. We have also held that where such a trustee receives dividends on its claim, the bankruptcy court has no jurisdiction to supervise the trustee's distribution of the dividends to its *cestuis*, the bondholders. In re Paramount Publix Corporation, 2 Cir., 72 F.2d 219. The appellants argue that the Paramount decision controls the case at bar. They are mistaken. That case did not hold that the bankruptcy court has no power to make the indenture trustee "disbursing agent" for the trustee in bankruptcy; it held only that where the court had not done so it could not supervise the distribution of dividends paid to the indenture trustee as a creditor. If the moneys paid to Empire were received by it in the capacity of "disbursing agent," we cannot doubt that the bankruptcy court retained jurisdiction to require such moneys to be returned to the court for distribution pursuant to § 66, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 106, sub. b.[2]

■ The special master and the district court were of opinion that Empire received the money as "disbursing agent" of the trustee in bankruptcy. We agree. Empire filed a proof of claim on March 19, 1920. Numerous bondholders also filed proofs of claim. On July 3, 1922, the bankruptcy court ordered a sale, in which the trustee in bankruptcy was to join with the indenture trustee, of the shares of stock which secured the bonds, reserving jurisdiction to make further orders. The sale produced far less than the amount owing on the bonds. On November 15, 1922, Empire petitioned that the proofs of claims filed by and on behalf of bondholders be consolidated with and merged into its proof of claim. The petition was granted by the order of December 1, 1922, which decreed that "dividends payable * * * in respect of said claims so consolidated shall be paid and disbursed by said Trustee in Bankruptcy through said Empire Trust Company as Trustee under said Trust Agreement dated March 5, 1906, and as disbursing agent of said Trustee in Bankruptcy to the holders of the several bonds * * * upon presentation of said bonds to said Empire Trust Company for the stamping thereon of an appropriate notation showing the amount of dividends paid in respect thereof; * * *" The order provided that "such payment in the manner aforesaid" should constitute an effectual discharge of the trustee in bankruptcy and Empire "with respect to the payment of such dividends." By paragraph V the court reserved jurisdiction "to make such further orders and decrees as may be proper in respect of any funds so deposited with

2. "§ 106. Unclaimed moneys

"a. Dividends or other moneys which remain unclaimed for sixty days after the final dividend has been declared and distributed shall be paid by the trustee into the court of bankruptcy; and at the same time the trustee shall file with the clerk a list of the names and post-office addresses, as far as known, of the persons entitled thereto, showing the respective amounts payable to them.

"b. Dividends remaining unclaimed for one year shall, under the direction of the court, be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full the balance shall be paid to the bankrupt: Provided, That, in case unclaimed dividends belong to minors, such minors may have one year after arriving at majority to claim such dividends."

Empire Trust Company, which shall not be disbursed to such bondholders within six months after deposit thereof." This final paragraph of the order shows clearly that the bankruptcy court meant to keep its grip on so much of the dividends as were not distributed to bondholders within six months. It is true that the six months period set by the court differs from the one year after the final dividend which § 66, sub. b, 11 U.S.C.A. § 106, sub. b, fixes as the time when unclaimed dividends may be distributed to other creditors. But the very fact that the court set a six month period and measured it from the deposit of the dividend with Empire, rather than "after the final dividend", is additional evidence that the court meant to keep control over the trustee's "disbursing agent." We conclude, therefore, as did the court below, that the court had jurisdiction to require Empire to pay into court the dividends it received from the trustee in bankruptcy and had not distributed to bondholders.

Since such dividends have remained unclaimed for many years "after the final dividend" § 66, sub. a, 11 U.S.C.A. § 106, sub. a, they are now distributable pursuant to the terms of § 66, sub. b, 11 U.S.C.A. § 106, sub. b. In re Gubelman, 2 Cir., 79 F.2d 976; In re Searles, 2 Cir., 166 F.2d 475, 4 A.L.R.2d 1431. The State of New York as an escheator can take nothing under § 66, sub. b. See In re Thompson's Estate, 3 Cir., 192 F.2d 451.

We have not overlooked the fact that in 1927 the trustee in bankruptcy was discharged and that this operates under § 2, sub. a (8), 11 U.S.C.A. § 11, sub. a (8) to "close" the estate. But the same section authorizes the court to "reopen estates for cause shown". No better cause could be shown than that the estate had not been fully administered. Indeed prior to the 1938 amendment of § 2, sub. a (8), that was the stated reason for reopening an estate.

Not all the moneys which Empire was directed to pay into court was unclaimed dividends. Some $7,000 represented proceeds of the sale of the collateral which Empire had not paid out pursuant to the order of June 29, 1923, because the bonds had not been presented. As "other moneys which remain unclaimed", § 66, sub. a, it stands on the same basis as unpaid dividends in so far as the appellants are concerned.

Order affirmed.